**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **ALLERGY & ASTHMA NETWORK MOTHERS OF ASTHMATICS** 2751 Prosperity Avenue, Suite 150 Fairfax, VA 22031-4397 | ) ) ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **-v-** | ) ) | Civil Action No._____ |
| **LINDA M. SPRINGER** in her official capacity as Director of the United States Office of Personnel Management 1900 E Street, N.W. Washington, D.C. 20415-0001, | ) ) ) ) ) ) ) ) | |
| **Defendant.** | ) ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**I.    STATEMENT OF FACTS**

**A.    The Combined Federal Campaign**

The Combined Federal Campaign ("CFC") was established by President Kennedy in 1961

as the exclusive means for federal employees[1] to make charitable contributions at their places of

work.  *See* 5 C.F.R. § 950.102 (a); *Planned Parenthood of Metropolitan Washington, D.C. v.

Horner*, 691 F. Supp. 449 (D.D.C. 1988).  In 2002, nearly four million federal civilian and postal

employees and military personnel were provided the opportunity to contribute to the charities of

their choice.  Federal employees and military personnel donated approximately $237 million to the

---

[1]  Armed forces personnel and postal service employees, as well as civil servants
participate in the CFC, which is conducted annually.

2002 CFC.  *See* OPM News Release, May 22, 2003.

The Director of the Office of Personnel Management ("Director") supervises the CFC.  5 C.F.R. § 950.102 (c).  The Director renders all final decisions regarding disputes.  The Director establishes and maintains an official list of local CFCs and the geographical areas they cover. The Director also designates Local Federal Coordinating Committees ("LFCCs") which conduct and supervise the local CFC in particular communities.  *See* 5 C.F.R. §§ 950.103 (a) and (b); *Planned Parenthood of Metropolitan Washington, D.C. v. Horner*, 691 F. Supp. 449 (D.D.C. 1988).

Each year the LFCCs establish a six (6) week period during which federal employees may be solicited for charitable contributions.  The solicitations may not begin before September 1 and may not extend beyond December 15.  Contributions are made either directly to the CFC or are withheld from participating employees' paychecks.  5 C.F.R. § 950.103.

Each year the Director compiles a list of charities eligible to participate nationally in all local campaigns ("National List").  Each LFCC is required to include the National List charities in the CFC brochures prepared and distributed to eligible federal employees in accordance with CFC regulations.  Upon receiving the brochure, federal employees receive a pledge card and  identify charities they wish to support.  5 C.F.R. §§ 950.105 and 950.201.

A charitable organization wishing to be included in the CFC applies annually to the Director. An organization seeking inclusion on the National List, *inter alia*, must certify: (a) it provides services or benefits in at least fifteen (15) states or a foreign country over the three year period immediately preceding the campaign year involved; and (b) it is recognized by the Internal Revenue Service as a tax-exempt organization under § 501(c)(3) of the Internal Revenue Code of 1986

("Code").  5 CFR § 950.202.[2]

The Director is required to issue the National List to all LFCCs each year.  As noted in Exhibit I to the complaint, the Director intends to distribute the National List on or about July 31, 2006 *via* display on the OPM web site.  The web site will contain the names of and information about charities included in the National List.

To the National List, LFCCs are permitted to add local charities, in accord with a local application process.  The LFCCs do not have discretion to remove a National List charity from the CFC.  The decision by the Director is final as to which charities are admitted to the CFC as National List charities.

Sometime shortly after July 31, 2006, it is anticipated the LFCCs will commence the printing of brochures for distribution to federal employees.[3]  These brochures must contain the names of and information about National List charities.  (Local charities, *but not National List charities*, will vary from brochure to brochure, depending on the region covered by the local federal campaign.)

---

[2] Section 950.202 states that organizations seeking national list eligibility must "(a) Certify that it [sic] provides or conducts real services, benefits, assistance, or program activities, in 15 or more different states or a foreign country over the 3 year period immediately preceding the start of the year involved.  The requirement cannot be met on the sole basis of services provided through an "800" telephone number or by sending materials via the U.S. Postal Service or a combination thereof.  A schedule listing those states (minimum 15) or the foreign countries (minimum 1) where the program activities have been provided and a detailed description of the activities in each state or foreign country must be included with the application.  While it is not expected that an organization maintain an office in each state or foreign country, a clear showing must be made of the actual services, benefits, assistance or activities provided in each state or foreign country."

[3] The exact printing dates will vary somewhat from one local LFCC to another.

3

**B.    The Allergy & Asthma Network Mothers of Asthmatics ("AANMA") and Its Application for Inclusion in the 2006 CFC**

AANMA is a non-profit, charitable corporation exempt from federal income tax as an organization described in Internal Revenue Code § 501(c)(3).  AANMA is a national nonprofit network of families whose desire is to overcome, not merely cope with, allergies and asthma.  As part of its mission, AANMA organizes and sponsors national and regional allergy and asthma awareness programs, advocates for issues affecting those with asthma and allergies, including patient access to specialty care and appropriate treatments, school nurses in every school, and children's rights to carry inhalers at school, provides information packets to families, patients, schools, health officials, and government agencies around the country, and maintains an interactive web site that gives patients and their families instant access to the most up-to-date information about asthma and allergies.  (Complaint, ¶ 5.)

AANMA is a member of Children's Medical Charities of America ("CMCA"), a non-profit, tax-exempt organization.  CMCA is a national federation, approved by the OPM, to participate in the 2006 CFC on behalf of its member organizations.  (Complaint, ¶ 6.)  *See* 5 C.F.R. § 950.301, *et seq.*  On or about January 27, 2006, in advance of the 2006 CFC application deadline, CMCA submitted an application on behalf of AANMA for participation in the 2006 CFC.  AANMA authorized CMCA to represent it before OPM in connection with the 2006 CFC. (Complaint, ¶ 7.)[4]

CMCA submitted a copy of AANMA's Attachment A along with its 2006 CFC application

_____

[4] Generally, approved national federations such as CMCA, which are eligible to participate in the CFC on behalf of their member organizations, submit annually to OPM lists of their members eligible to participate in a particular CFC.  The individual members do not submit formal applications to participate in the particular CFC unless OPM so requests.  However, because CMCA was a new federation in 2006 it was required to submit complete application files for all its members.

4

on the required OPM form.  Attachment A described AANMA's services, benefits, assistance and program activities undertaken throughout the United States.  AANMA described how it conducted and/or participated in numerous Asthma Awareness Days across the country, attended and disseminated information at educational programs at health fairs, hospitals, and schools, distributed educational materials regarding allergies and asthma to thousands of individuals, distributed AIRepair Kits to thousands of individuals, provided free asthma screenings.  (Complaint, ¶ 12.)

Nevertheless, on June 2, 2003, the Defendant denied AANMA's application for inclusion in the 2006 CFC, stating, in pertinent part:

> *AANMA did not include sufficient information to support a claim that the organization provided or conducted real services, benefits, assistance, or program activities in 15 or more different states or a  foreign country over the three-year period immediately preceding January 2006.  Please see CFC Memo 2004-1- (attached) regarding the dissemination of publications.*

By letter dated June 16, 2006, Sherry Raynor, President of CMCA appealed the initial denial of AANMA's application to participate in the 2006 CFC.  Raynor asserted OPM did not provide a basis for its denial of AANMA's Attachment A, that the previously submitted Attachment A was sufficient to meet eligibility, that OPM's review conducted an incomplete examination of the data, and that OPM's denial of AANMA was arbitrary and inconsistent with eligibility findings made for similar documentation.  Additionally, Raynor submitted an elaboration of the Attachment A data previously submitted.

By letter dated July 17, 2006, the Defendant, through OPM Deputy Director Blair, sustained the decision to deny AANMA's application.  Blair stated in pertinent part:

> *I am sustaining the decision to deny the application[] of Allergy and Asthma Network/Mothers of Asthmatics .... Allergy and Asthma Network/Mothers of Asthmatics' application provided information on services provided in a number of states. However, we were only able to identify eight states where qualifying services,*

*such as presentations and advocacy activities, occurred. The remaining states detailed representatives' attendance at meetings and/or the dissemination of materials, neither of which are considered a real service for CFC eligibility purposes.*

5 C.F.R. §§ 950.102(c) and 950.205(f) provide that "[t]he Director's decision is final for administrative purposes.

## II.    AANMA  IS ENTITLED TO INJUNCTIVE RELIEF

### A.    Standards For Granting Preliminary Injunctive Relief

AANMA is entitled to preliminary injunctive relief if it demonstrates (i) a substantial likelihood of success on the merits; (ii) a substantial threat of irreparable injury if the requested relief is not granted; (iii) no other parties will be harmed if temporary relief is granted; and (iv) issuance of the injunction will serve the public interest. *Virginia Petroleum Jobbers Ass'n v. Federal Power Commission*, 259 F. 2d 921, 925 (D.C. Cir. 1958); *Washington Metropolitan Area Transit Comm'n v. Holiday Tours*, 559 F.2d 841, 843 (D.C. Cir. 1977); *Serono Laboratories, Inc. v. Shalala*, 158 F.3d 1313 (D.C. Cir. 1998).

AANMA is not required to prevail on each of these factors. Under *Holiday Tours*, these factors must be viewed as a continuum, with the presence of more than one factor compensating for less of another. "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *Cityfed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). A court may issue an injunction "where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *Id.* Thus, preliminary injunctive relief may issue "with either a high probability of success and some injury or vice versa." *Cuomo v. United States Nuclear Regulatory Commission*, 772 F.2d 972, 974 (D.C. Cir. 1985).

6

**B.     There Is A Substantial Likelihood AANMA Will Prevail On The Merits**

In this action, AANMA appeals from an informal agency adjudication reviewable under §

706 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.

Pursuant to § 706 of the APA, informal agency action must be set aside "if it fails to meet

statutory, procedural or constitutional requirements or if it was 'arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law...'"   5 U.S.C. § 706(2)(A); *Olenhouse v.*

*Commodity Credit Corporation*, 42 F.3d 1560 (10th Cir. 1994) quoting *Citizens to Preserve Overton*

*Park v. Volpe*, 401 U.S. 402, 413-14 (1971).   A reviewing court, in applying the "arbitrary or

capricious" standard, asks whether the agency engaged in reasoned decision making.  *Clifton Power*

*Corp. v. F.E.R.C.*, 88 F.3d 1258 (D.C. Cir. 1996); *Motor Vehicle Mfrs.  Ass'n v. State Farm Mut.*

*Auto. Ins. Co.,* 463 U.S. 29, 43 (1983).

1.     Defendant's Denial of AANMA's Application Abridges Its First
Amendment Rights

Charitable solicitation of federal employees through participation in the CFC is protected by

the First Amendment.  *Cornelius v. NAACP Legal Defense and Educational Fund*, 473 U.S. 788

(1985).

> The brief statements in the CFC literature directly advance the speaker's interest in
> informing readers about its existence and goals.   Moreover, an employee's
> contribution in response to a request for funds functions as a general expression of
> support for the recipient and its views...[T]he CFC literature facilitates the
> dissemination of views and ideas by directing employees to the soliciting agency to
> obtain more extensive information...Finally, without the funds obtained from
> solicitation in various fora, the organization's continuing ability to communicate its
> ideas and goals may be jeopardized....Thus, the nexus between solicitation and the
> communication of information and advocacy of causes is present in the CFC as in
> other contexts.

*Id.* at 3447.

7

In *NAACP Legal Defense and Educational Fund, Inc. v. Campbell*, 504 F. Supp. 1365 (1981), two charities challenged their exclusion from the CFC. The Manual on Fund-Raising Within the Federal Service for Voluntary Health and Welfare Agencies ("Manual")[5] stated that "[o]nly nonprofit, tax-exempt charitable organizations, supported by voluntary contributions from the general public and providing direct services to persons in the fields of health and welfare services are eligible for approval."

The defendant contended the charities were not eligible to participate in the CFC because they served as legal advocates for groups but did not provide "direct services" to persons such as providing legal representation for individuals unable to afford the cost of retaining private attorneys. The court found that the "direct services" requirement did not meet First Amendment standards. The term was not defined "and the term [direct services] standing alone, is too vague to comport with the strict standards of specificity required when limits are placed on First Amendment activity." *Id.* at 1367. No established standards existed that would guide the government in determining whether an organization provided "direct services." The "direct services" requirement did not have "the precision necessary to comport with constitutional requirements." *Id.* at 1368.

Similarly, the requirement that eligible CFC national list participants must demonstrate they provide or conduct "real" or "actual" services, benefits, assistance or program activities is similarly vague because the terms "real" or "actual" services, benefits, assistance or program activities are not defined in the regulations. What constitutes "real" or "actual" conduct is capable of subjective determinations without the necessary specificity to permit applicants to conform their conduct to qualifying standards.

_____

[5]The Manual predated the current CFC regulations found at 5 CFR Part 950.

There is no dispute that in forty-six (46) states AANMA actively promotes education and awareness regarding allergies and asthma. In *more than* fifteen (15) states across the country AANMA has members, recruits members, disseminates educational materials, holds and participates in Asthma Awareness days, health fairs, and other educational programs, distributes AIRepair kits, performs asthma screenings, and otherwise seeks to educate the public concerning allergies and asthma.

AANMA listed in Attachment A to its 2006 CFC application (as well as in its supplement to Attachment A) the states where these activities and services occurred. AANMA provided detailed information in its application with regard to the activities described above. Yet, Defendant arbitrarily determined that AANMA's detailed description of its activities was insufficient because it was "only able to identify eight states where qualifying services, such as presentations and advocacy activities, occurred. The remaining states detailed representatives' attendance at meetings and/or the dissemination of materials, neither of which are considered a *real service* for CFC eligibility purposes." (Emphasis added.)

CFC Memorandum 2004-10, cited by Mr. Blair in support of his conclusion that AANMA satisfied national eligibility criteria in only 8 states, states that "the dissemination of information and publications, alone, does not meet the national eligibility criteria." This memorandum refers to CFC Memorandum 2003-9 in which OPM states: "Dissemination of Information/Research. The dissemination of information and publications, alone, does not meet the eligibility criteria in CFC regulations... *for providing real services, benefits, assistance or program activities.*" (Emphasis added.).

The two CFC memoranda cited above apparently were issued in an attempt to define "real

services, benefits, assistance or program activities." *See* 5 C.F.R. §950.202. In these memoranda, OPM does not articulate any reason whatsoever as to why dissemination of information and publications alone does not constitute a "real" service. "Dissemination of information" is not defined. Does this standard apply to lecturers, teachers and other instructors who "disseminate information?" Would it apply to an AANMA staff member, an expert in respiratory diseases, who tours a state giving 100 lectures on the deleterious effects of second-hand smoke on asthma sufferers? Would OPM seriously conclude the AANMA staff member was not engaged in a "real" service because he or she "merely" disseminated information?

As these examples clearly set forth, "dissemination of information" is a vague and imprecise concept, the application of which in this case, violates AANMA's First Amendment rights.

Even assuming *arguendo,* OPM validly abrogates "dissemination of information" as a "real" service, AANMA not only disseminated information to interested persons, but engaged in additional qualified activities in more than 15 states.

AANMA sent OPM two versions of an exhibit entitled "Attachment A" in which AANMA set forth the activities it undertook among the several states. Both of these exhibits were attached to AANMA's response, dated June 16, 2006, to OPM's initial denial of AANMA's application identified as exhibit 2A (the initial Attachment A submitted with the CFC applications) and exhibit 2B, a revised version of Attachment A. Together, these two versions of Attachment A (attached as Exhibits A and C1 to the Complaint) demonstrate that AANMA, contrary to OPM's findings, engaged in "real benefits and services" in at least 15 states as set forth below:[6]

---

[6]As set forth in ¶16 of the Complaint, CFC memorandum 2003-9 provides the following example of qualified activity description: "Colorado – October 20, 2001 – Presented at the University of Colorado Health and Wellness Fair. Staff were on-hand to distribute educational

1. **California** – In addition to distributing asthma education related materials to 1000 people, AANMA sponsored a family program in January, 2003 regarding asthma education and awareness. Additionally, a representative of AANMA conducted three health fairs for schools in schools in Yuba City, California to educate children and teachers regarding asthma.

2. **District of Columbia** – In addition to distributing asthma education related materials to interested persons between, in November, 2003, Sandra Fusco-Walker, director of government affairs, gave a speech to the National Patient Advocate Foundation in regard to allergies and asthma. In 2003-2005, AANMA held its annual Asthma Awareness Day on Capitol Hill which featured patient education material and free asthma screenings to members of Congress, doctors, other health professionals and more than 200 other visitors.

3. **Florida** –   In addition to distributing asthma education related materials to interested persons, an AANMA representative, whose son died of asthma, conducted an Asthma Awareness Day on April 3, 2004, which featured patient education materials and free asthma screenings.

4. **Louisiana** –   In addition to distributing asthma education related materials to interested persons, AANMA held an Asthma Awareness Day in May, 2003 which featured patient education materials and free asthma screenings.   In November, 2003, Sandra Fusco-Walker, director of government affairs, spoke at the American College of Allergy, Asthma and Immunology Conference.

5. **Maryland** –   In addition to distributing asthma education related materials to interested persons, an AANMA representative, Jennifer Harrington, attended a Head Start Program in January,

---

information and answer questions from students." Each of the descriptions of activities set forth below and in Attachment A and the supplement thereto follow this paradigm.

2004 and gave a presentation in which she discussed asthma and distributed materials to over 200 participants.

6. **Minnesota** – In addition to distributing asthma education related materials to interested persons, in 2004, Christy Olson, AANMA's nurse educator, provided one-on-one advice to persons with questions and concerns about asthma via AANMA's web site and its free telephone help line.

7. **Nebraska** – In addition to distributing asthma education related materials to interested persons, in June, 2003, AANMA distributed 800 AIRepair kits to local schools, health fairs, hospitals and physicians. In 2004, AANMA screened 100 people for asthma. In 2004, an AANMA representative spoke at a local health fair.

8. **Nevada** – In addition to distributing asthma education related materials to interested persons, in December, 2003, Sandra Fusco-Walker, AANMA's director of government affairs, spoke to 300 persons attending the American Association of Respiratory Care conference in Las Vegas on allergies and asthma.

9. **New Jersey** – In addition to distributing asthma education related materials to interested persons, in 2003, AANMA sponsored a family support group and made five presentations in regard to asthma before 600 people. In June, 2003, AANMA distributed indoor AIRepair kits to 990 people. In May, 2004, Sandra Fusco-Walker, AANMA's director of government affairs, attended the Pediatric Asthma Coalition of New Jersey's statewide meeting and made a presentation.

10. **New York** – In addition to distributing asthma education related materials to interested persons, AANMA participated in the Brooklyn Collaborative with other organizations to present three programs concerning asthma education and treatment in which 600 people attended. In 2003, AANMA sponsored family programs in which 50 persons attended. In June, 2003, AANMA

distributed indoor AIRepair kits to nearly 800 persons who attended health fairs. In May, 2004, AANMA representative Pat Smith conducted an Asthma Awareness Day  which featured patient education material and free asthma screenings.

11. **North Carolina** –   In addition to distributing asthma education related materials to interested persons, AANMA distributed 814 indoor AIRepair kits to over 800 families, health fairs, hospitals. In May, 2004, AANMA representative Teresa Fralich conducted an Asthma Awareness Day  which featured patient education material and free asthma screenings. In 2004, AANMA sponsored the Garibaldi Festival and Camp Breathe Easy  in which programs were provided to 300 people who learned about asthma.

12. **Ohio** –   In addition to distributing asthma education related materials to interested persons, in June, 2003, AANMA sponsored 3 programs attended by 300 people who learned about asthma.  In June, 2003, AANMA distributed indoor AIRepair kits to 1100 people.

13. **Oregon** –   In addition to distributing asthma education related materials to interested persons, in December, 2005, Gracie Lee, a community health nurse of a Head Start program in Portland, Oregon, on behalf of AANMA, instructed a class for child care professionals in regard to asthma.

14. **Pennsylvania** –   In addition to distributing asthma education related materials to interested persons, in October, 2004, Sandra Fusco-Walker spoke at the Patient Advocate Leaders Summit in Philadelphia.

15. **South Dakota** –    In addition to distributing asthma education related materials to interested persons, AANMA co-sponsored an Asthma Awareness Day Screening program in 2003, which featured patient education material and free asthma screenings. AANMA  In 2003, AANMA

13

also sponsored a Teen Awareness Event in regard to asthma.

16. **Tennessee** – In addition to distributing asthma education related materials to interested persons, several AANMA outreach service coordinators assist at a Respiratory Caregivers Conference. In 2003, AANMA developed a "Tools for Schools" program at over 30 schools in which teachers, students and their families were taught how to identify environmental hazards affecting persons with asthma and environmental remediation strategies. Through this program, AANMA advocates on behalf of students who suffer from asthma and require a school environment free of allergens and other causes of asthma.

17. **Texas** – In addition to distributing asthma education related materials to interested persons, in June, 2003, AANMA's outreach service coordinators distributed over 300 indoor AIRepair kits.

18. **Utah** – In addition to distributing asthma education related materials to interested persons, Sandra Fusco-Walker was in charge of an AANMA exhibit booth at the National Conference for State Legislatures in Salt Lake City in July, 2004. During this conference she conferred with legislators and advocated on behalf of students suffering from asthma.

19. **Virginia** – AANMA's dedicated staff directs the organization's activities from its headquarters located in Virginia. All planning for the organization's activities, including Asthma Awareness Days, the training of outreach service coordinators, the research and writing of the organizations publications and other products, and other of the organization's charitable activities occur in Virginia.

20. **Washington** – In addition to distributing asthma education related materials to interested persons, in 2003, Sandra Fusco-Walker attended and spoke at the National Association

of School Nurses Conference in Seattle. AANMA also sponsored an asthma related educational event in which 200 people attended and learned about asthma.

Clearly, AANMA engaged in qualified activities in more than 15 states during the three year period preceding the 2006 CFC.

Without a precise definition of "real" or "actual" in the regulations, AANMA could not possibly foresee what constitutes a sufficiently "real" or "actual" service to qualify for participation in the CFC. Neither could AANMA conform its actions to such imprecise standards. Because the regulations are vague as to what qualifies as "real" or "actual" benefits or services to be conducted in each of the 15 states, the regulations Defendant relied upon violate the First Amendment.

2. <u>Defendant's Denial of AANMA's 2006 CFC Application Was Arbitrary and Capricious</u>

Under the "arbitrary or capricious" standard, the court reviews an agency's decision making process and determines whether the agency examined "the relevant data and articulate[d] a satisfactory explanation for its action *including a rational connection between the facts found and the choice made*." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (emphasis added.); *Touris Records, Inc. v. Drug Enforcement Administration*, 259 F.3d 731 (D.C. Cir. 2001). Agency action will be set aside "if the agency relied on factors which Congress has not intended for it to consider, entirely failed to consider an important aspect of the problem, *offered an explanation for its decision that runs counter to the evidence before the agency,* or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Manufacturers,* 463 U.S. at 43 (emphasis added).

The grounds upon which the agency made its decision must be clearly articulated and a reasoned explanation for its action must appear in the record. "It is well-established that an agency's

15

action must be upheld, if at all, on the basis articulated by the agency itself." *Id.* at 50. The court

is required to conduct a plenary review of the record to ascertain whether the agency's action is

sustained by the record and supported by "substantial evidence." *Association of Data Processing*

*v. Board of Governors,* 745 F. 2d 677, 683-84 (D.C. Cir. 1984). The agency's decision, therefore,

must be supported by facts found in the record.

> "When the arbitrary or capricious standard is performing that function of assuring
> factual support, there is no *substantive* difference between what it requires and what
> would be required by the substantial evidence test [applicable to formal adjudication
> under §706(2)(E)], since it is impossible to conceive of a 'nonarbitrary' factual
> judgment supported only by evidence that is not substantial in the APA sense."

*Id.* at 683. (emphasis in original.)

The Director has acted without authority and in an arbitrary and capricious manner in

rejecting AANMA's application for inclusion in the 2006 CFC. In her July 17, 2006 letter, the

Director rejected AANMA's 2006 CFC application stating:

> *I am sustaining the decision to deny the application[] of Allergy and Asthma
> Network/Mothers of Asthmatics .... Allergy and Asthma Network/Mothers of
> Asthmatics' application provided information on services provided in a number of
> states. However, we were only able to identify eight states where qualifying services,
> such as presentations and advocacy activities, occurred. The remaining states
> detailed representatives' attendance at meetings and/or the dissemination of
> materials, neither of which are considered a real service for CFC eligibility
> purposes.*

AANMA provided extensive and detailed information about its purposes and activities to

defendant in its 2006 CFC application. Attachment A to its 2006 CFC application identified the

states where AANMA provides extensive information and services to the public about allergies and

asthma. AANMA described in more than ample detail its activities in each state. AANMA

demonstrated conclusively that it conducted "real services, benefits, assistance or program

activities" in *at least* 15 states during the previous three year period. *See* Exhibit A to the

Complaint.

Thus, defendant's rationale for denying AANMA's application, *viz.*, that it was "only able to identify eight states where qualifying services, such as presentations and advocacy activities, occurred" inexplicably ignores the detailed description of activities provided in NGF's Attachment A.

Moreover, OPM's denial of AANMA's form of distribution of materials is inconsistent with OPM's own instructions and prior approvals of other charities by OPM. AANMA's program details in Attachment A are substantially similar to those described in OPM's Memo 2004-10 under "appropriate Attachment A formats" which links to OPM Memo 2003-9. *See* Exhibits "E" and "F" to the Complaint. OPM Memo 2003-9 provides the following description as an example of a "Qualifying Attachment A:"

> ***Colorado***
> *October 20, 2001 - Presented at the University of Colorado Health and Wellness Fair. Staff were on-hand to distribute educational information and answer questions from students*

In 2003, OPM approved the applications of two charities (Vegan Outreach and The Humane Farming Association) whose Attachment A's described services which included the distribution of materials via table top fairs. Yet, Defendant inexplicably denied AANMA's 2006 CFC application which contained almost identical information as that submitted by Vegan Outreach and the Humane Farming Association with regard to their 200e CFC applications, which Defendant approved.

Defendant's decision, therefore, was arbitrary and capricious. AANMA submits there is a substantial likelihood it will prevail on the merits.

## C.   AANMA Will Suffer Irreparable Injury If Preliminary Injunctive Relief Is Not Granted

The Director will distribute the National List to LFCCS on or about July 31, 2006. *See* CFC

17

schedule attached as Exhibit I to the complaint.  The issuance date of the National List for the 2006 CFC is imminent.

The LFCCs  publish this list in a brochure which identifies participating nationally eligible charities and includes a short description of their  programs and purposes.  The brochures  provide essential information relied upon by federal employees in deciding which charities to support through direct contributions and payroll deductions.

Exclusion of AANMA from the National List for the 2006 CFC will inflict substantial economic harm and other injuries which cannot be rectified for several reasons.  AANMA will be deprived of the exercise of its First Amendment right to communicate its message to millions of federal employees who otherwise would not have the opportunity to receive this information. Not coincidentally,  AANMA also will be precluded from seeking  financial support for its cause during the 2006 CFC.  The CFC is the exclusive means whereby federal employees may be solicited for charitable contributions in the workplace.  *See, e.g.*, *Planned Parenthood of Metropolitan Washington, D.C. v. Horner*, 691 F. Supp. 449 (D.D.C. 1988) (injunction was issued preventing enforcement of OPM regulation preventing a national organization and one of its affiliates from simultaneously appearing on the list of eligible organizations distributed to federal employees in their local CFCs).  Moreover, given the large number of federal employees located in every state and abroad, AANMA cannot solicit contributions directly from this same audience without incurring exorbitant costs.

Finally, AANMA cannot recover from the government the amount of contributions it will not receive as a result of the Defendant's action.  In addition to the loss being difficult, if not impossible to quantify, AANMA has no remedy at law as the result of the federal government's

immunity from damages for these types of suits. *See, e.g.*, *Woerner v. United States Small Business Administration*, 739 F. Supp. 641 (D.D.C. 1990).

The losses described herein are real, immediate and irremediable absent preliminary injunctive relief.

**D.     Third Parties Will Not Suffer Harm If Preliminary Injunctive Relief Is Granted**

No other parties will suffer harm if the relief requested by AANMA is granted. The list of national organizations eligible to participate in the CFC easily can be updated and revised by the Director to include AANMA and be distributed to the local LFCCs *via* OPM's web site. The brochures have yet to be printed and distributed, so no additional expenses for reprinting the brochures need be incurred. Moreover, other eligible charitable organizations participating in the CFC will not be harmed because the 2006 CFC has yet to begun. For these reasons, no harm will occur to other parties if preliminary injunctive relief is granted.

**E.     Grant of Preliminary Injunctive Relief Will Serve The Public Interest**

The public interest is undoubtedly served by AANMA's participation in the CFC. Inclusion of AANMA in the 2006 CFC permits millions of federal employees to learn of the organization, to receive its message, and to make donations to permit the organization to continue to carry out its charitable activities. If the requested preliminary injunctive relief is granted, AANMA's participation in the CFC will guarantee that AANMA may continue to conduct and/or participate in Asthma Awareness Days across the country, attend and disseminate information at educational programs at health fairs, hospitals, and schools, distribute educational materials regarding allergies and asthma to thousands of individuals, distribute AIRepair Kits to thousands of individuals, provided free asthma screenings, and otherwise educate the public with regard to allergies and

asthma.

Moreover, "there is a strong public interest in meticulous compliance with law by public officials." *Fund for Animals v. Espy*, 814 F. Supp. 142, 152 (D.D.C. 1993). In the instant action, the Defendant's arbitrary denial of AANMA's application was based on vague and imprecise standards and on reasons not supported by the record.

Therefore, the public interest will be served by granting the requested preliminary injunctive relief.

## III.    CONCLUSION

For the reasons stated herein, AANMA respectfully requests this court to order the requested preliminary injunctive relief.

Respectfully submitted,

Allergy & Asthma Network Mothers
of Asthmatics

By Counsel

_/s/_____
Bernard J. DiMuro, Esq. (D.C. Bar #929406)
DIMURO GINSBERG, P.C.
908 King Street, Suite 200

Alexandria, Virginia 22314
(703) 684-4333
(703) 548-3181 (facsimile)

Noland MacKenzie Canter, III (D.C. Bar #93616)
Mark J. Diskin (D.C. Bar #334086)
Copilevitz & Canter, LLC
1900 L Street, N.W., Suite 215
Washington, D.C. 20036

*Counsel for Plaintiff*